1

2

3

4

5

6

7

8      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
9      AT TACOMA

10

11   FERNANDO PAZ,                          CASE NO. C13-5104 RJB

                         Plaintiff,          ORDER GRANTING
12                                           DEFENDANT'S MOTION FOR
                                             SUMMARY JUDGMENT
13           v.

14   CITY OF ABERDEEN,

                         Defendant.
15

16        This matter comes before the Court Defendant City of Aberdeen's Motion for Summary

17   Judgment. Dkt. 12.  The Court has considered the pleadings in support of and in opposition to

18   the motion and the record herein.

19                        **INTRODUCTION AND BACKGROUND**

20        The Plaintiff Fernando Paz commenced this action on February 13, 2013.  Dkt. 1.  The

21   action arises out of an abatement process initiated by the City of Aberdeen which culminated in

22   the demolition of a building owned by Mr. Paz.  *Id*.  The Complaint asserts due process and

23   trespass claims alleging that the City unlawfully demolished Paz's building without proper

24   notice.  Dkt. 1 pp. 12-14; Dkt. 8 p. 1.

1    The Plaintiff owns property located at 217 N. "F" Street in the City of Aberdeen.  In

2  2007, the property was owned by Richard R. Pennant.  Dkt. 28 p. 2.  In response to tenant

3  complaints, the City of Aberdeen initiated abatement proceedings in 2007.  Dkt. 20 p. 2; Dkt. 28

4  p. 2.  Mr. Pennant attended an administrative hearing and executed a consent form for the City to

5  inspect the building.  Dkt. 20 p. 2; Dkt. 28 p. 2.  The inspection found the condition of the

6  premises unsafe for human habitation or other uses under the Aberdeen Municipal Code (AMC)

7  15.50.030.  Dkt. 20 p. 2-3; Dkt. 28 p. 2.  Mr. Pennant was issued an Order and Notice to Repair

8  which provided a date of December 17, 2007, to submit a repair schedule to complete the

9  necessary repairs.  Dkt. 28 p. 2.  Mr. Pennant did not complete the necessary repairs, or submit

10  the requested repair schedule.  Dkt. 28 p. 3.  Ultimately, the City concluded that the property was

11  not habitable and issued an order to vacate and secure the premises until it was repaired.  *Id*.  The

12  property was vacated in response to this order.  *Id.*

13    On September 12, 2008, the City was notified through an e-mail from Plaintiff Fernando

14  Paz that he had purchased the subject property.  Dkt. 13 p. 4; Dkt. 20 p. 3.  Plaintiff's e-mail, and

15  all of Plaintiff's subsequent e-mails, listed his address as 1918 E. Alder St. Seattle, Washington.

16  *Id*.  In response to Plaintiff's e-mail, on September 18, 2008, the City sent a letter to Plaintiff

17  informing him of the abatement proceedings and requesting that he attend an informal

18  administrative hearing, scheduled for September 29, 2008, to discuss Plaintiff's intentions for the

19  property and to clarify the City requirements to restore the structure for habitable use.  Dkt. 23 p.

20  6.  This letter was sent by both regular and certified mail to Plaintiff's address at 1918 E. Alder

21  Street, Seattle, Washington.  Dkt. 20 p. 3; Dkt. 23 pp. 6-7.  The certified mail was accepted and

22  the regular mail was not returned, indicating to the City that Plaintiff's address was valid for

23  receipt of City notifications addressed to Plaintiff.   Dkt. 20 p. 3; Dkt 23 p. 7.

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 2

1    Plaintiff did not appear at the scheduling meeting.  Instead, he contacted the City by e-

2  mail indicating his intention to complete the necessary repairs to the building.  Dkt. 13 p. 4.  A

3  permit for foundation and roof repair was issued to Plaintiff on June 5, 2009.  Dkt. 23 p. 13.

4  Plaintiff also obtained permits for temporary power to the building.  Dkt. 23 pp. 15-17.  When

5  Plaintiff began to demolish the rear half of the structure without the necessary permits, a stop

6  work order was issued on June 26, 2009, by the Department of Labor and Industries and the City.

7  Dkt. 13 p. 4-5.  Plaintiff obtained the demolition permit on July 16, 2009.  *Id.*  Plaintiff did not

8  obtain any other permits for repair of the building and his existing permits expired due to

9  inactivity.  *Id*; Dkt 16 p. 13.

10    Due to the presence of debris, appliances and garbage located on the property, on July 17,

11  2009, the City Code Enforcement Officer sent Plaintiff a notice and order to abate unsafe and

12  unlawful conditions under the AMC 8.08.030.  The notice and order required that Plaintiff

13  remove the debris, litter, junk and other fixtures from the outside of the property by July 27,

14  2009.  Dkt. 20 p. 4; Dkt. 23 pp. 21-22.  Although the City received notice that the certified mail

15  had not been claimed, the plaintiff received the letter sent by first class mail.   Plaintiff responded

16  to the letter by e-mailing the City's building department on July 22, 2009, requesting additional

17  time to remove the debris.  Dkt. 16.

18     In February, 2010, the City began receiving complaints that sewage odors were coming

19  from the Plaintiff's or neighboring property.  Dkt. 13 p. 5.  Upon investigation, it was determined

20  that the sewer service for the property was open under the building.  *Id*.   On February 19, 2010,

21  the City sent Plaintiff a Notice and Order to abate unsafe or unlawful condition on the property

22  to address the accumulation of junk, debris and raw sewage.  Dkt. 23 pp. 21-22; Dkt. 16 pp. 13.

23  This was sent by first class and certified mail.  Dkt. 27 p. 3.  Plaintiff states that he did not

24

1   receive this Notice and Order.  Dkt. 40 p. 2.  Plaintiff sent an e-mail to the City on March 15,

2   2010 indicating he had recently learned of the sewer concerns with his building and requesting

3   information about the issue.  Dkt. 16 pp. 19-21.  The e-mail was forwarded to the City Sewer

4   Department which responded by e-mail explaining its findings.  Dkt. 16 p. 18.  Plaintiff did not

5   comply with the abatement order.  Dkt. 28 p. 5.

6        The City issued a formal Complaint of Unfit Building or Premises on March 9, 2010, and

7   set a hearing on the issue for March 24, 2010.  Dkt. 23 pp. 24-25.  The Complaint states that a

8   "[f]ailure to file an answer with the building official at or before the time set for the

9   administrative hearing or to appear at the administrative hearing will result in an order requiring

10  that the premises be made fit for human habitation or other use or that the premises be

11  demolished, pursuant to AMC 15.50.070."  *Id*.  The Complaint was sent to Plaintiff at his Seattle

12  address by certified and first class mail.  Dkt. 23 pp. 26-27.  Although the certified mail was

13  returned unclaimed, the City did not receive a return of the copy sent by first class mail.  *Id*.  The

14  Complaint was also posted on the premises. Dkt. 16 p. 14.  Plaintiff states that he did not receive

15  the Complaint or notice of the hearing.  Dkt. 40 p. 2.  The Plaintiff did not appear for the hearing

16  held on March 24, 2010, and did not send a representative.   Dkt. 13 p. 6; Dkt. 40 p. 2.

17       On March 25, 2010, the City sent Plaintiff a letter stating that the City had cleared the

18  property of debris and secured the building.   Dkt. 23 pp. 29-31. The letter also requested

19  permission to conduct a full inspection of the property.  *Id*. The letter informed Plaintiff that the

20  Aberdeen Municipal Code grants the building inspector the right to enter, at reasonable times,

21  any dwelling unit, structure or building within the City limits and to perform any duty imposed

22  on him by the Code.  *Id*.  Plaintiff was expressly informed that the City would proceed to obtain

23  a search warrant if such consent was not returned by the April 2, 2010 deadline.  *Id*.  Attached to

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

1  the letter was a consent form to be completed and returned by Plaintiff granting permission to

2  conduct a full inspection. *Id.* The letter was sent by First Class and certified mail. Although the

3  certified mail was later returned "unclaimed", the regular mail was not returned. Dkt. 23 pp. 32-

4  33. Plaintiff states that he did not receive the letter or request for consent to inspect the property.

5  Dkt. 40 pp. 2-3.

6         On March 30, 2010, Plaintiff sent an e-mail to the City building inspector and the

7  building and code enforcement officer indicating receipt of a City letter. Dkt. 16 pp. 21-22.

8  The email stated that it is Plaintiff's "intentions with the property are and were to finish the

9  project." *Id.* The e-mail then discussed Plaintiff's problems regarding the sewer lines. *Id.* The

10  e-mail did not address the City's request for access to the property. *Id.*

11         On April 22, 2010, the City sought a search warrant for the premises. Dkt. 28 p. 6; Dkt.

12  29 pp. 34-41; Dkt. 30 pp. 1-2. The affidavit sought access and the right to search for criminal

13  violations of the AMC, including chapter 15.36 of the National Electrical Code, chapter 15.08 of

14  the International Building Code, chapter 15.12 of the International Fire Code, chapter 15.50 of

15  the Unsafe Buildings Code, chapter 8.08 AMC, the nuisance code, chapter 13.08, the solid waste

16  code, chapter 13.56 AMC, the water code, and chapter 13.52, the sewer code. *Id.*

17         The same day the affidavit was submitted, April 22, 2010, the City code compliance

18  officer received an e-mail from Plaintiff requesting information as to the right of the City to enter

19  his property and indicating he planned to pay the City charges for clean-up of debris on the

20  property. Dkt. 28 p. 6; Dkt. 40 p. 25-28. Plaintiff referenced a March 26, 2010 invoice mailed to

21  his Seattle address for costs incurred by the City in abatement of nuisance debris. Dkt. 40 pp.

22  30-32. The compliance officer responded to the e-mail, explaining to Plaintiff that he had failed

23  to respond to the City's notice of February 19, 2010, and did not appear for the administrative

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 5

1    hearing scheduled for March 24, 2010.  Plaintiff was told that the City was obtaining a search

2    warrant and that if he would like, the City would remove the garbage at his expense.  Dkt. 31 p.

3    13.

4         Plaintiff responded by e-mails on April 22-23, 2010, complaining that he had not been

5    properly notified.  Dkt 31 p. 15; Dkt. 40 pp. 37-41.  Plaintiff requested the City provide proof of

6    service.  *Id.*

7         On April 26, 2010, the Aberdeen Municipal Court issued a search warrant for the

8    property and seizure of evidence of violations of the City's codes.  Dkt. 31 p. 11.  A copy of the

9    warrant was posted on the premises and the City searched the property on April 29, 2010.  Dkt.

10   28 pp. 6-7.  A return of the warrant was prepared.  Dkt. 31 pp. 17-20.  The inspection and return

11   of warrant documented severe degradation and code violations and demonstrated that the

12   premises continued to deteriorate and were unfit for human habitation or other uses.  Dkt. 13 p.

13   7; Dkt. 19 pp. 1-6.

14        Pursuant to the procedures outlined in the City's abatement code, AMC Chapter 15.50,

15   the City building inspector used the inspection report and construction estimator software to

16   estimate the construction costs necessary to repair and thus bring the building into compliance

17   with the code. Dkt. 13 p 7-8.  The cost of repair was estimated to be $118,769.61.  *Id.*  The

18   building inspector also prepared an appraisal of the building using the Marshall and Swift

19   Residential Cost Handbook.  Dkt. 13 p. 8.  The building was estimated to be valued at

20   $203,147.00 before applying any depreciation to the building.  *Id.;* Dkt. 24; Dkt. 25.   Based on

21   this information, the City Building Official determined the building needed to be demolished

22   pursuant to the City's abatement code.  *Id.*  Pursuant to AMC 15.50.040(A)(1), demolition was

23

24

1    necessary because the estimated repair costs exceeded 50-percent of the replacement value for a

2    building or structure of a similar size, design, type and quality.  Dkt. 27 p. 4, 12.

3         On May 11, 2010, the City Building Official issued an Order to Vacate, Secure and

4    Demolish the property.  Dkt. 27 pp. 31-35.  Demolition was necessary because, based on the

5    inspection of April 29, 2010, the estimated repair costs exceeded 50-percent of the replacement

6    value for a building or structure of a similar size, design, type and quality.  Dkt. 24; Dkt 25; Dkt.

7    27 p. 4.  The May 11, 2010 Order also notified the plaintiff of his right to appeal the Order

8    within 30 days.  Dkt. 27 p. 5

9         The Order was mailed to the plaintiff by both first class and certified mail on May 11,

10   2010, along with copies of the inspection report, construction estimate, the photographs, the

11   Marshall & Swift estimate of replacement value, an appeal form and forms to apply for

12   demolition permits.  Dkt. 20 p. 5; Dkt. 24.  The certified mail was returned, but the regular mail

13   was not returned.  Dkt. 25 p. 18.  The Order was also posted on the premises.  Dkt. 27 p. 4.

14        On May 15, 2013, the Plaintiff admitted actual receipt of this Order.  Plaintiff e-mailed

15   the City stating, "I received your letter."  Dkt. 19 pp. 11-12.  He further stated, "I can not (sic)

16   demolish the building..." and "Please do not ask me to demolish my building."  *Id.*

17        The City responded by e-mail on Monday, May 17, 2010, and advised the plaintiff of his

18   appeal rights.  Dkt. 19 p. 11.  The Plaintiff responded by requesting an appeal form.  Dkt. 19 p.

19   10; Dkt. 40 p. 4.  The City responded indicating that everything Plaintiff needed to file an appeal

20   was in the mailing they sent him.  Dkt. 19 p. 10.

21        On May 18, 2010, Plaintiff sent an e-mail to the City stating that his neighbor had

22   informed him that their mail was getting mixed up.   Dkt. 40 p. 46.

23

24

1    After the appeal period had expired, on June 14, 2010, the City sent Plaintiff a letter

2 notifying him that he had until July 14, 2010, to remove any personal property in the building or

3 on the property.  Dkt. 27 p. 5.

4    The Plaintiff sent the City an appeal, which was received by the City via fax on June 21,

5 2010 and by mail on June 22, 2010.   Dkt. 27 p. 5; Dkt. 26 pp. 7-9, 11-13; Dkt. 40 p. 4.

6    On June 24, 2010, the City sent a letter to the plaintiff notifying him that the deadline for

7 receipt of his appeal expired June 11, 2010, and that the City was proceeding with the abatement

8 and demolition of the structure.  Dkt. 27 p. 37; Dkt. 40 p. 4.  Plaintiff then appeared at two City

9 Council meetings in an unsuccessful attempt to plead his case.  Dkt. 40 p. 5.

10    The City sought bids and received two responsive bids for the demolition of the

11 plaintiff's property.  Dkt. 27 pp. 5-6. The City accepted the lowest bid for $17,127 from Gordy

12 Bagnell Trucking, and the bid was approved by the City Council on September 22, 2010.  *Id.*

13 Following demolition of the building, the City sent Plaintiff an invoice for the demolition costs.

14 Dkt. 27 p 41.  Plaintiff failed to pay the invoice.  Dkt. 27 p. 6.  The assessment of cost costs was

15 then transmitted to the County Treasurer's office for entry upon the tax rolls against the subject

16 property as required by City Code and statute.  Dkt. 27 p. 47.

17    On February 13, 2013, Plaintiff filed this action.  Dkt. 1.

18                            **SUMMARY JUDGMENT STANDARD**

19    Summary judgment is appropriate only when the pleadings, depositions, answers to

20 interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories,

21 and other materials in the record show that "there is no genuine issue as to any material fact and

22 the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a

23

24

1    motion for summary judgment, the evidence, together with all inferences that can reasonably be

2    drawn there from, must be read in the light most favorable to the party opposing the motion.

3    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

4        The moving party bears the initial burden of informing the court of the basis for its

5    motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex*

6    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of

7    proof, the moving party must make a showing that is sufficient for the court to hold that no

8    reasonable trier of fact could find other than for the moving party.  *Idema v. Dreamworks, Inc*.,

9    162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

10        To successfully rebut a motion for summary judgment, the non-moving party must point

11    to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*

12    *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact that might

13    affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc*., 477

14    U.S. 242, 248 (1986).  A dispute regarding a material fact is considered genuine "if the evidence

15    is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* at 248.

16    There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa*

17    *de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc*., 690 F.2d 1235, 1238 (9th Cir.

18    1980).  The mere existence of a scintilla of evidence in support of the party's position is

19    insufficient to establish a genuine dispute; there must be evidence on which a jury could

20    reasonably find for the party. *Anderson*, at 252.

21                 **PROCEDURAL DUE PROCESS**

22        Plaintiff asserts that the City of Aberdeen violated his due process rights as guaranteed by

23    the United States Constitution.  Plaintiff argues that the City violated his procedural due process

24

1  rights under the United States Constitution by failing to provide him with adequate notice of its

2  orders to repair and later demolish his building, and his appeal rights.

3      The federal Constitution requires notice "prior to an action that affects an interest in life,

4  liberty, or property by the Due Process Clause of the Fourteenth Amendment." *Mennonite Bd. of*

5  *Missions v. Adams*, 462 U.S. 791, 795 (1983); *see also Mullane v. Cent. Hanover Bank Trust*

6  *Co.*, 339 U.S. 306, 314 (1950). There is no question that the Plaintiff's ownership interest in real

7  property merits the procedural protections of due process of law. *United States v. James Daniel*

8  *Good Real Prop.*, 510 U.S. 43, 49 (1993). The only question is whether the Plaintiff has come

9  forward with sufficient evidence to show constitutionally inadequate notice.

10      Due process does not require that a property owner receive actual notice before the

11  government may take his property. *Jones v. Flowers*, 547 U.S. 220 (2006). Under the

12  Fourteenth Amendment, what is required is "notice reasonable under the circumstances, to

13  apprise interested parties of the pendency of the action and to afford them an opportunity to

14  present their objections." *Mennonite*, 462 U.S. at 795. Therefore, the City was required to use

15  reasonably diligent efforts to provide notice to Plaintiff. The notice is "constitutionally sufficient

16  if it was reasonably calculated to reach the intended recipient when sent." *Jones*, 547 U.S. at

17  226.

18      The City mailed to Plaintiff the Complaint of Unfit Building or Premises, the letter

19  requesting consent to conduct an inspection, and the Order to Vacate, Secure and Demolish the

20  property. These notices and orders were mailed by both certified and first class mail to

21  Plaintiff's known Seattle address. The Complaint and Order to Demolish were also posted on

22  the premises. In all three instances, the certified mail was returned unclaimed. The first class

23  mail was not returned.

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 10

1    Plaintiff alleges all the City notices were not received and argues that when the certified

2    mail was returned unopened, the City violated his due process rights in not taking further steps to

3    inform his of the proceedings.  In support of this argument, Plaintiff cites *Jones v. Flowers*, 547

4    U.S. 220 (2006).  The situation presented here, however, is distinguishable from that in *Jones*.

5    In *Jones*, the Supreme Court found that when notice sent by certified mail is returned

6    unopened, a municipality is responsible for taking additional steps to ensure that notice is

7    received.  *Id.* at 235.  *Jones* suggests that the necessity for additional reasonable measures to

8    provide notice depends on the circumstances.  While the Court said that it would not dictate how

9    notice should be provided, since notice was only sent by certified mail and returned, the Court

10   suggested that other reasonable steps could be taken such as resending notice by regular mail and

11   posting the notice on the property.  *Id.* at 234-35.

12   In the present case the undisputed evidence demonstrates that both certified and regular

13   mail notices were sent to the Plaintiff's known Seattle address.  Although the certified mail was

14   returned unclaimed, the notices sent to the Seattle address by regular mail did not come back.  In

15   *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983), the United States Supreme Court

16   held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum

17   constitutional precondition to a proceeding which will adversely affect the liberty or property

18   interests of any party ... if its name and address are reasonably ascertainable."   Generally, notice

19   is sufficient if mailed to an address reasonably believed to be that of the intended recipient.

20   *Dusenbery v. United States*, 534 U.S. 161, 172 (2002).  The Supreme Court has repeatedly

21   recognized that mail service is an inexpensive and efficient mechanism that is reasonably

22   calculated to provide actual notice.  *Tulsa Prof'l Collections Servs., Inc. v. Pope*, 484 U.S. 478,

23   490 (1988).  Mail properly addressed, stamped and deposited in the mail system is presumed to

24

1  have been received by the party to whom it has been addressed. *Hagner v. United States*, 285

2  U.S. 427, 430 (1932); *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir. 1998); *Schikore v.*

3  *BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001).

4      Plaintiff's allegation that the City had the opportunity to notify him of the intended

5  demolition during his email exchanges with City employees does not raise a genuine dispute of

6  material fact concerning the reasonableness of the City's steps to provide notice.

7  Here, the City had no information that would give reason to suspect Plaintiff would not actually

8  receive notice mailed to his known address.  The evidence in fact demonstrates that Plaintiff did

9  receive mail at the stated address.  Further, it is not necessary that Plaintiff actually receive

10  notice; it is sufficient that the City used methods reasonably designed to notify him.  Subjected to

11  the notice standards of procedural due process, the attempts at notice here must be found

12  sufficient, despite their purported lack of success.

13      Plaintiff's procedural due process claims are subject to dismissal.

14      Further, the City is also protected from due process claims under the federal Constitution

15  because it has established a reasonable procedure for the service of notice.  In *Monell v. Dept. of*

16  *Social Serv.*, 436 U.S. 658, 690 (1978), the Supreme Court found that municipalities cannot be

17  held liable under Section 1983 of the Civil Rights Act for an act inflicted solely by its employees

18  or agents.  "Instead, it is when execution of a government's policy or custom ... inflicts the injury

19  that the government is an entity responsible under Section 1983."  *Id.* To establish *Monell*

20  liability, plaintiff must demonstrate that the defendant's policy or custom caused the alleged

21  constitutional injury.

22      Although Plaintiff's complaint asserts that the City's municipal code has a number of

23  defects that result in a deprivation of due process when undergoing hearings regarding the

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 12

1   potential demolition of a building (Dkt. 1 p. 5), Plaintiff has failed to support this argument with

2   any evidence raising a genuine issue of material fact.  The City's established practice of sending

3   notices by both regular and certified mail and posting the notices on the subject property satisfies

4   due process concerns.  There is no evidence that the alleged inadequate notice to Plaintiff was

5   part of an unconstitutional custom, policy, or widespread practice, or that there is evidence of

6   repeated constitutional violations for which the errant municipal officers were not held

7   accountable.  See *Gillette v. Delmore,* 979 F.2d 1342, 1349 (9th Cir. 1992); *Davis v. City of*

8   *Ellensburg,* 869 F.2d 1230, 1233 (9th Cir. 1989).  In the absence of such evidence, there is no

9   genuine issue of material fact on this issue and Plaintiff's procedural due process claims are

10  subject to dismissal.

11  **SUBSTANTIVE DUE PROCESS**

12      Plaintiff's Complaint, while focusing primarily on the procedural due process claims,

13  also appears to assert that the City violated Plaintiff's substantive due process.

14      The elements of a substantive due process claim are (1) the deprivation of a fundamental

15  property interest and (2) governmental deprivation of that property interest in a manner that is

16  arbitrary or shocks the conscience.  *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Squaw*

17  *Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 948-49 (9th Cir. 2004).

18      It is well established that the state has the right to regulate the use and conditions of

19  property to ensure the public safety and health, and that the public interest demands that

20  dangerous conditions be prevented or abated.  See *Keystone Bituminous Coal Ass'n. v.*

21  *DeBenedictis*, 480 U.S. 470, 491-92 (1987); *Camara v. Municipal Court of San Francisco*, 387

22  U.S. 523, 537 (1967).

23

24

1   The evidence shows that the property was in an imminently dangerous condition and that

2   Plaintiff has come forward with no evidence that the property was not in an imminently

3   dangerous condition.

4   The demolition of imminently dangerous structures in accordance with City procedures

5   does not shock the conscience.  See *Hoeck v. City of Portland*, 57 F.3d 781, 786 (9th Cir.

6   1995)(City's demolition of the plaintiff's vacant building had a rational basis and City had ample

7   authority under the Portland City Code to abate abandoned buildings); *Davet v. City of*

8   *Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006)(affirming district court's holding that plaintiff's

9   substantive due process claim failed because he could not establish that municipal actions taken

10  pursuant to a valid condemnation order and in accordance with the procedures mandated by city

11  and state law shocked the conscience or were arbitrary and capricious).  Although Plaintiff

12  complains about the appraisal process, there is no evidence raising a genuine issue of fact the

13  procedures employed by the City were constitutionally deficient.  Accordingly, the City is

14  entitled to summary judgment on any substantive due process claim.

15  **TRESPASS CLAIM**

16  The City also seeks dismissal of Plaintiff's trespass claim.

17  To establish intentional trespass, a plaintiff must show (1) an invasion of property

18  affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability

19  that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial

20  damages.  *Bradley v. Am. Smelting & Ref. Co.,* 104 Wn.2d 677, 692–93 (1985).  An entry upon

21  another person's land that might otherwise be wrongful is not a trespass if it is a privileged entry.

22  See *Brutsche v. City of Kent*, 164 Wn.2d 664, 673-76 (2008)(if officers executing a search

23  warrant unnecessarily damage the property while conducting their search, that is, if they damage

24

1  the property to a greater extent than is consistent with a thorough investigation, they exceed the

2  privilege to be on the land and liability in trespass can result).

3       In this case, the City was privileged to enter the plaintiff's property to abate a public

4  nuisance.  Entry onto property is authorized by the Aberdeen Municipal Code.  It is not a

5  trespass for public agency inspectors to enter property pursuant to authority granted by statutes

6  and rules safeguarding public health.  *Peters v. Vinatieri*, 102 Wn. App. 641, 656 (2000).

7       The City's evidence shows (1) that the search warrants were issued based upon probable

8  cause to believe that there were numerous criminal violations of City codes identified on the face

9  of the affidavit for the warrant; (2) that these various codes make violations a misdemeanor; (3)

10 that the warrant itself states that there is probable cause to believe that there is evidence of a

11 crime at the plaintiff's building; (4) that the Aberdeen Municipal Court has jurisdiction to issue

12 criminal search warrants; and (5) that the warrant was authorized on a showing of probable

13 cause, upon presentation of an affidavit under oath or sworn testimony establishing the grounds

14 therefore.

15      In light of this uncontroverted evidence, Plaintiff's trespass claim is subject to dismissal.

16                    **ATTORNEY FEES AND COSTS**

17      A district court may award attorneys' fees pursuant to 42 U.S.C. § 1988 to a prevailing

18 civil rights defendant if the plaintiff's action was "unreasonable, frivolous, meritless, or

19 vexatious."  *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007);*Vernon v. City of

20 Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994).  An action becomes frivolous when the result

21 appears obvious or the arguments are wholly without merit. See *Christiansburg Garment Co. v.

22 EEOC*, 434 U.S. 412, 422 (1978); see also *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980). A

23 defendant can recover if the plaintiff violates this standard at any point during the litigation, not

24

1    just at its inception. See *Christiansburg Garment Co.*, 434 U.S. at 422.  The fact that a plaintiff

2    loses at summary judgment does not render the case *per se* frivolous, unreasonable, or without

3    foundation.  *Galen*, 477 F.3d at 667.

4         Although Plaintiffs claims are borderline unreasonable, they are not wholly without

5    merit.  Defendant is not entitled to an award of attorney's fees and costs.

**CONCLUSION**

7         Taking the summary judgment evidence in the light most favorable to Plaintiff, the

8    evidence shows that the City of Aberdeen took reasonable steps to provide Plaintiff notice of the

9    proceedings, and that Plaintiff is not entitled to relief under 42 U.S.C. § 1983 for violation of

10   procedural or substantive due process.  Plaintiff's trespass claim is also subject to dismissal.

11        Therefore, it is herby **ORDERED**:

12        Defendant's Motion for Summary Judgment (Dkt. 12) is **GRANTED.**  Plaintiff's claims

13        are **DISMISSED WITH PREJUDICE**.  Defendant's request for an award of attorney's

14        fees and costs is **DENIED**.

15        Dated this 17th day of December, 2013.

ROBERT J. BRYAN
United States District Judge